**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

GREGORY FERGUSON,

                                     Plaintiff,

        - v -                                    Civ. No. 9:09-CV-549
                                                                   (DNH/RFT)

COLE,[1] *Correctional Officer, Auburn Correctional Facility*,

                                       Defendant.
_____

**APPEARANCES:**                                     **OF COUNSEL:**

GREGORY FERGUSON
95-A-1149
Plaintiff, *Pro Se*
Southport Correctional Facility
P.O. Box 2000
Pine City, New York 14871

HON. ERIC T. SCHNEIDERMAN                 MICHAEL G. McCARTIN, ESQ.
Attorney General of the State of New York      Assistant Attorney General
Attorney for Defendant
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

      *Pro se* Plaintiff Gregory Ferguson brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that, while housed at Auburn Correctional Facility, Defendant Kowal violated his constitutional rights when he failed to transfer Plaintiff out of a double-bunked cell as Plaintiff requested, thereby failing to protect him from his cell mate who physically assaulted Plaintiff. *See*

---

[1] The correct spelling of this Defendant's name is "Jody Kowal" and the Court will refer to him as such. Dkt. No. 12 at p. 2; Dkt. No. 16 at ¶ 3.

*generally* Dkt. No. 8, Am. Compl.  Pending before this Court is Defendant Kowal's Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56(c), based solely on Plaintiff's purported failure to fully exhaust his available administrative remedies.  Dkt. No. 21.  Defendant claims that Plaintiff failed to present his failure to protect claim to the highest level of administrative review, namely the Central Office Review Committee (CORC).  *See generally id.*  Plaintiff opposes the Motion, claiming he ultimately received the relief sought through the grievance process and therefore had nothing further to appeal.  Dkt. No. 24.  For the following reasons, this Court recommends **granting** Defendant's Motion and **dismissing** this case in its entirety.

## I. DISCUSSION

### A. Standard of Review

Pursuant to FED. R. CIV. P. 56(c)(2), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party."  *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set out specific facts

showing [that there is] a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e)(2); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## B. Background[2]

Plaintiff testified at his deposition that he arrived at Auburn on June 23, 2008, and was assigned to a double-bunked cell with an inmate named Grady, whom Plaintiff alleges was a gang member and was supposed to be assigned to a special housing unit, not a double-bunked cell. Dkt. No. 21-2, Michael McCartin, Esq., Decl., dated Aug. 10, 2010, Ex. A, Pl.'s Dep., dated May 21, 2010 (docketed at Dkt. No. 21-3), at pp. 9 & 21-22. Plaintiff asserts that he arrived at the cell first and was told by the officer to take the top bunk. *Id*. at pp. 10-13. At some point on June 23rd, Plaintiff and Inmate Grady engaged in an elongated verbal dispute over who would sleep on the top bunk; this argument is alleged to have spanned, on and off, for over five hours. *Id*. at pp. 10-19. The verbal altercation petered out when Plaintiff unilaterally took the top bunk at 11:00 p.m. *Id*. The following date, the verbal fighting over the bunk assignment resumed, but this time Inmate Grady allegedly threatened Plaintiff with physical harm. *Id*. at pp. 18-19. Plaintiff testified that at approximately 8:00 a.m., he informed Defendant Kowal about the violent threats and asked that one of them be transferred out of the cell, but Defendant Kowal allegedly declined the request. *Id*. at pp. 19-21 & 25. Approximately twenty minutes later, Inmate Grady allegedly assaulted Plaintiff. *Id*. at pp. 37-46. It is not clear how long the physical altercation lasted, but at some point Defendant broke up the fight and informed both inmates that he was not going to issue either of them a misbehavior report because their transport buses were ready to take them each to another facility.

---

[2] The Court is utilizing Plaintiff's examination before trial solely to provide some background information as to what events gave rise to Plaintiff's Complaint. Dkt. No. 21-2, Michael McCartin, Esq., Decl., dated Aug. 10, 2010, Ex. A, Pl.'s Dep., dated May 21, 2010 (docketed at Dkt. No. 21-3). Because Plaintiff's testimony is riddled with equivocations and inconsistencies, we proceed with great caution and assure the parties and the District Judge that by using Plaintiff's testimony to set forth the background for this case, in no way do we find that any fact discussed in this section is established or uncontested. In the event this Court's recommendation is not adopted and this case proceeds to trial, the Plaintiff will bear the burden of proving, by a preponderance of the evidence, the substantive facts underlying his *prima facie* case.

*Id*. at pp. 46-47.  Later, Plaintiff arrived at Green Haven Correctional Facility and was seen by medical staff.  *Id*. at pp. 49-50.[3]

### C. Exhaustion of Remedies

The Prison Litigation Reform Act of 1996 (PLRA) imposes several restrictive conditions on a prisoner's ability to bring a federal civil rights action.  With regard to the issue before this Court, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citations omitted).

Exhaustion of administrative remedies under the PLRA is an affirmative defense which must be raised and proven by the defendants. *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999) (noting that exhaustion of remedies is an affirmative defense); *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999) (citations omitted) (noting that the burden remains with the defendants to prove that administrative remedies had not been exhausted).  The party opposing the affirmative defense "may delay the ultimate determination as to its validity until trial by showing that there is a genuine issue of material fact to be determined." *Id.* (citations omitted).

In New York State, the administrative remedies consist of a three-step review process.  First,

---

[3] Plaintiff asserts that over the following months, it was discovered that his eye lens had been dislocated, resulting in surgery in August 2008. Dkt. No. 21-3, Pl.'s Dep. at pp. 50-62.  He attributes the injury to his eye to the altercation with Inmate Grady.

a grievance is submitted to the Inmate Grievance Review Committee (IGRC), a committee comprised of both inmates and facility employees.[4] N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id*. Second, if the IGRC decision is appealed, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id*. at § 701.5(c). Finally, if the superintendent's decision is appealed, the Central Office Review Committee (CORC) makes the final administrative determination. *Id*. at § 701.5(d). Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to § 1983 in federal court. *Bridgeforth v .Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

In support of his request for summary judgment, Defendant produces a Declaration from Karen Bellamy, Director of the Inmate Grievance Program of the New York State Department of Correctional Services (DOCS). Dkt. No. 21-4, Karen Bellamy Decl., dated Aug. 9, 2010. Ms. Bellamy searched CORC records and determined that Plaintiff never filed an appeal with CORC relating to the June 24, 2008 assault at Auburn. *Id*. at ¶ 2, Ex. A. This fact is not contested by Plaintiff. Pl.'s Dep. at p. 81.

During the course of Plaintiff's examination before trial, a detailed discussion developed regarding Plaintiff's efforts to exhaust his available administrative remedies. *Id*. at pp. 62-101. Regarding the Auburn incident, Plaintiff asserts that he filed grievances at Green Haven, Auburn, and at Southport. *Id*. at pp. 62-63. During the deposition, Plaintiff claimed that he filed the grievance at Green Haven shortly after his transfer in early July 2008, but he did not receive a

---

[4] The IGRC is a five-member body consisting of two voting inmates, two voting staff members, and a non-voting chairperson (who may be an inmate, staff member, or volunteer). N.Y. COMP. CODES R. & REGS tit. 7, § 701.4.

response. *Id*. at pp. 62 & 68-73.  Because of his befuddling testimony, it is unclear whether Plaintiff complained of only the Grady assault or if he also complained of Defendant's purported failure to protect him.  *Compare id*. at p. 66, lines 6-11 ("Q: [D]id you say that Defendant Kowal was the reason for you being assaulted because you didn't get moved out of the cell? A: No.") *with id.* at p. 67, lines 15-17 ("Q: Did you mention Defendant Kowal by name in that Green Haven grievance? A: Yes. Yes, I mentioned his name.").  Plaintiff further avowed that he wrote letters to the grievance office and superintendent regarding his unanswered grievance, but never received a response to those letters.  *Id*. at pp. 72-74.  Having received no response, Plaintiff took no further action with regard to his Green Haven grievance.  *Id*. at pp. 78-81.

Months later, in March 2009, Plaintiff filed a grievance at Auburn during a temporary stay at that facility.  *Id*. at pp. 87-88.  The subject of this grievance was the fact that he was doubled-bunked; he did not mention Defendant Kowal or the fact that he feared being assaulted by Inmate Grady and advised an officer as such.  *Id*. at pp. 90 & 98-99.  As with the case of the Green Haven grievance, Plaintiff asserts he did not receive a response.  *Id*. at pp. 90-91.  Again, he wrote letters, this time to the Auburn grievance office, but not to the superintendent nor to CORC.  *Id*.

Also in March 2009, Plaintiff filed a grievance at Southport.  *Id*. at pp. 81-82.  In response, he was told to file a grievance at Auburn, where the incident occurred.  *Id*. at pp. 62-63 & 92-93.  Plaintiff took no further steps with regard to his Southport grievance.  *Id*. at p. 96.  However, he claimed that after receiving the Southport response, he again followed up with the Auburn grievance office and was told that his Auburn grievance had been granted.  *Id*. at pp. 96-97.

Throughout the testimony relayed above, Plaintiff continually insisted that in his cell he had copies of several grievances and letters he filed in an attempt to fully exhaust his administrative

remedies; Defendant's counsel accordingly made discovery requests, on the record, for those documents.[5] *See id.* at pp. 62-102. In reviewing the pending Motion, the Court noticed that while Defendant provided proof in support for his basis for summary judgment, in response, Plaintiff did not provide the Court with any documentary proof of his efforts to exhaust. Instead, he relies upon the conclusory notion that he received a "favorable recommendation from the IGRC" and therefore had nothing further to appeal. Dkt. No. 24, Pl.'s Opp'n, at p. 3. In light of his *pro se* status, this Court sought to provide Plaintiff with an opportunity to submit all documentation he had in his possession that would support his exhaustion efforts. Dkt. No. 27, Order, dated Oct. 22, 2010. In this regard, we directed both parties to file written statements as to Plaintiff's response to the oral discovery requests; copies of those documents were also summoned. *Id.* In response, Defendant stated that he had not received any document from Plaintiff. Dkt. No. 28. Plaintiff stated that the only document in his possession is the grievance he filed at Auburn; he did not provide a copy of that grievance. Dkt. No. 29.

Plaintiff's only defense to Defendant's Motion is the notion that a grievance was decided in his favor and, so, there was nothing for him to appeal. Pl's Opp'n at p. 3 ("Practically speaking there was nothing more plaintiff could have accomplished from DOCS, as the assault on him had [already] taken place. At this point[,] litigation was the only avenue in which plaintiff would be able to get the monetary relief he currently seeks."). This defense is not supported by the evidence before

---

[5] Plaintiff provided no explanation as to why he did not previously provide Defendant with copies of those documents in accordance with the Court's Mandatory Pretrial Discovery and Scheduling Order. That Order, issued on January 28, 2010, directed Plaintiff, *inter alia*, to serve Defendant with "[c]orrespondence, grievances, grievance appeals, and other documents relating to requests for administrative remedies or the inability or failure to exhaust such remedies." Dkt. No. 17 at Part I.A.1.b. Prior to the deposition, Defendant's counsel reminded Plaintiff of his obligation to provide to him "material that would show that [he] in any way filed an administrative grievance related to the subject action." Dkt. No. 18.

the Court nor the law in this Circuit.

Though exhaustion is mandatory, certain caveats apply wherein a prisoner's failure to exhaust may be excused: (1) when administrative remedies are not available to the prisoner, *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004); (2) when the defendants waive the defense by failing to raise or preserve it, *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004), or acted in such a manner that they are estopped from raising it, *Ziemba v. Wezner*, 366 F.3d 161 (2d Cir. 2004); and (3) when special circumstances exist to justify the prisoner's failure to comply with the exhaustion requirement, *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004). Plaintiff's response to Defendant's Motion rests on the notion that, ultimately, a grievance was decided in his favor, therefore litigation was the logical next step. Based upon this theory, we find that scenarios two and three above are not applicable here. Instead, because Plaintiff admits that he did not appeal his grievances through each level of review, the question for the Court is whether a purportedly favorable IGRC response renders other administrative remedies unavailable.[6]

To be "available" under the PLRA, a remedy must afford "the possibility of some relief for the action complained of." *Booth v. Churner*, 532 U.S. 731, 738 (2001). To answer our question, we must look not only at the matters grieved and responses received, but also the matters at issue in this action, keeping in mind that the concept of "availability" speaks to the "procedural means,

---

[6] Previously, there was no mechanism in DOCS regulations for appealing a favorable determination. *See Abney v. McGinnis*, 280 F.3d 663, 668 (2d Cir. 2004) (noting that while a favorable IGRC response is automatically transmitted to the superintendent for action, "[t]here is no similar procedure available for automatic advancement of a favorable ruling from the superintendent to the CORC"). In 2006, the regulations were amended and a new section was added allowing for oversight and follow-up to ensure implementation of favorable dispositions are carried out. *See* N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(c)(4) ("Implementation of decisions. The IGP supervisor or the superintendent must verify compliance with superintendents' responses that require some form of implementation. Documentation of compliance must be filed with the grievance record. If a decision is not implemented within 45 days, the grievant may appeal to CORC citing lack of implementation as a mitigating circumstance."), *adopted on* June 28, 2006 by New York Regulation Text – Netscan, 2006 NY REG TEXT 7 NYCRR 701 (June 28, 2006), *effective* July 1, 2006.

not the particular relief ordered," since "one 'exhausts' processes, not forms of relief." *Id*. at 739. Thus,

though an inmate may be interested in obtaining solely monetary relief, the fact that the grievance program does not afford such relief does not mean that other administrative remedies are not available to the prisoner. *See generally id*.

Based on what has been presented, we are not entirely convinced that Plaintiff included his failure to protect claim in any of his alleged grievances. From the paucity of information provided by Plaintiff, it appears that the favorable result he references is the validation that he should not have been double-bunked. Pl.'s Opp'n at p. 3. This is further bolstered by reviewing Plaintiff's Original Complaint, wherein he attached a copy of a Green Haven Inmate Grievance Complaint, dated June 24, 2008, which he signed. Dkt. No. 1, Compl. at p. 9. The document does not contain an official stamp from Green Haven's Inmate Grievance Program. That grievance concerns the assault that took place on June 24th at Auburn, but there is no mention of Defendant Kowal and his alleged failure to protect Plaintiff. Plaintiff also attached what appears to be a letter, dated July 15, 2008, from Plaintiff (though it is unsigned) to the superintendent of Green Haven seeking follow-up to the aforementioned grievance. *Id*. at p. 8. Curiously, neither of these documents are attached to Plaintiff's Amended Complaint, which he filed as of right. Dkt. No. 8, Am. Compl. Instead, attached to that pleading is an Inmate Grievance Resolution Committee (IGRC) response, dated April 9, 2009, to some unknown grievance. *Id*. at p. 8. The response reads as follows: "ACTION REQUE[S]TED GRANTED[.] PE[R] LT OUIMETTE GRIEVANT SHOULD NOT HAVE BEEN DOUBLE BUNKED WITH ANY ONE[.]  INMATE FERGUSON SHOULD BE IN A SINGLE CELL[.]   HE DOES NOT MEET DOUBLE BUNK STATUS DUE TO HIS RECENT

DISCIPLINARY HISTORY." *Id*. Because Plaintiff only attached the portion of the grievance wherein the IGRC provides its decision, it is unclear what issue was before the IGRC. Nevertheless, it seems consistent and logical to find that this IGRC response, served on Plaintiff at Southport, is perhaps the response he received to his Auburn grievance – the grievance he admits did not contain any reference to Defendant Kowal, either by name or by a retelling of the circumstance of his alleged involvement in failing to protect Plaintiff from Inmate Grady.

The fact that Plaintiff felt the IGRC was favorable to him did not excuse his obligation to pursue available remedies with regard to his failure to protect claim against Defendant. In *Ruggiero v. County of Orange*, the Second Circuit grappled with the situation where an inmate sought a transfer from his cell for fear that his cell mate may harm him; instead of being transferred to a new cell, the prisoner was transferred to another facility. 467 F.3d 170, 177 (2d Cir. 2006). Though in his lawsuit he asserted that the transfer to another facility was retaliation for his complaints, the inmate claimed he did not need to file a grievance because he had been afforded the remedy he desired, namely, transfer out of his cell and out of harms way. The Second Circuit considered its past decisions and Supreme Court precedent and determined that administrative remedies were still available. *Id*. at 177-78. In rendering this decision, the Second Circuit distinguished the case from the situation in *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004), wherein the inmate kept receiving favorable decisions that were never implemented, and instead relied upon *Booth v. Churner*, 532 U.S. 731 (2001) and *Braham v. Clancy*, 425 F.3d 177 (2d Cir. 2005), for the proposition that other remedies still existed such as disciplining the officers or changing policy and thus being provided with a desirable result did not render all remedies unavailable. *Id*. Similarly, with regard to the claims in this action, Plaintiff had other remedies available to him prior to initiating this federal case.

Arguably, though the IGRC's response was acceptable to him, it did not address his complaints against the Defendant in this action. Since we did not receive the grievances themselves, we have no way of verifying whether Plaintiff grieved the factual circumstances at issue in this litigation. And his bewildering testimony further complicates our ability to do so. But, nevertheless, Plaintiff could have pursued the fact that neither the IGRC nor the superintendent took any action with regard to his purported complaints of employee misconduct. His vindication that he should not have been double-bunked "did not provide him with all of the relief available to him. . . . [and] so long as some remedy remains available, failure to exhaust is not excused." *Ruggiero v. County of Orange*, 467 F.3d 170,177 (2d Cir. 2006). Thus, we find that Plaintiff did not fully exhaust the administrative remedies available to him and Defendant's Motion should be **granted**.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendant's Motion for Summary Judgment (Dkt. No. 21) be **granted** and this entire case be **dismissed**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   January 24, 2011
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge